We'll begin with the first, therefore we'll dispense with the call of the calendar and we'll begin with United States v. Fabio Gasparini. Good morning, your honors. My name is Simone Berolini. I represent the final appellant, Fabio Gasparini. May I reserve a minute for rebuttal? Go ahead. May I please the court? The Misdemeanor Computer Intrusion Statute is especially unconstitutional. The statute does not define what information is under the statute. It doesn't matter what the information is or whether the information has any value. Subsection a2 is a felony if committed for commercial purpose, for furthering any criminal or torturous act, or when the value of the information exceeds $5,000. In these instances, at least, we can infer that Congress intended for information to have any value. In fact, they put even a tag price. With respect to the misdemeanor— I'm sorry, your issue is that it's unclear whether information has to have value? That is one of the issues. It's unclear whether it has to have value. It doesn't say anything about value, so why would we even think that's an issue? The value part comes up, I suppose, in the context of commercial use, which might imply you can't make commercial use of something valueless or fraud, but I'm not sure why anyone would even think there's an issue. Information is information. What is information? Nowhere in the statute there's a definition of information. It can be— How about in the dictionary? Is there a definition of information? I believe that we will have to find that in the statute, Your Honor, but my position is that the statute does not define, does not put on notice, any person of what is prohibited under the statute. It can be public information, private information, worthless information— Yeah, fine. Why not? Why not all of it? It's too vague. Why is that vague? It's broad, but I'm not sure why it's vague. You say it could be private or public information. It could. Agreed. It could be anything. Then we will all be hackers because every computer is a protected computer, so if I go into a friend's house and I have authorization to access— Yeah, is that what Mr. Gasparini did? No, Mr. Gasparini— No, isn't what Mr. Gasparini did right at the heart of what Congress intended? I don't believe so. Isn't this hacking? Didn't he hack into thousands of computers? I believe that he was acquitted of that, Your Honor. No, he wasn't. He was convicted of the very statute that you are talking about, which is intruding into corporations without authorization to get information. That's what he was convicted of. I believe that the Bill of Particular says that he obtained information from his own servers also, and as far as I know, he could have been convicted of accessing computers that are located outside the United States when the United States did not prove that that access was not authorized. Convicting Gasparini for spreading a code, assuming that the jury found that he spread a code, without any evidence that he actually used those credentials, would be the equivalent of convicting someone of trespass for having copied someone's keys without that person using that key. The term access also is ambiguous under the statute. What is access? Is having passwords without using them access? If so... How did he get the passwords? Well, the code will create the password. There's no evidence that he ever used those passwords, assuming that the jury convicted him of spreading the code, which, by the way, spreading the code is prohibited under Subsection A-5. So Subsection A-5, which he was not even charged with, prohibits that conduct. So the same conduct, I'm assuming, cannot be prohibited also under A-2, which is a more catch-all provision. Also, I'm not... Do you think the two federal criminal statutes can't overlap in coverage? I believe that if two laws govern the same factual situation, a law governing a specific subject matter overrides a law governing only general matters, from the Latin maxim, lax specialist, derogate, lax general. By the way, was this vagueness challenge made in the district court? Your Honor, it was not, and there's two reasons. So your argument really is that the district court should have sua sponte, decided that the statute was unconstitutionally vague and that the failure to do so was plain error. Isn't that what you have to establish here? My understanding is that a void for vagueness challenge can be raised for the first time on appeal. This court of appeal held in Mercado v. Rockefeller 502 F2D 666, case from 1974, that the void for vagueness claim could be raised for the first time on appeal because it involved fundamental rights. I didn't say it couldn't be raised. The question is, do you have to establish that it's plain error? Okay. It was plain error for the judge to move forward. Okay. Now, if it was plain error, what is the authority or established law that made it clear or should have made it clear to the district judge that this statute was unconstitutionally vague? Has any court anywhere ruled this statute vague previously? No, they didn't know, Your Honor. But the indictment did not allege simple intrusion. So we were not even in a position to raise that challenge below. Aren't all of the arguments that you're making arguments that would go equally to the fraud, the enhanced felony charge that was expressly in the indictment? Your Honor, simple intrusion requires fraudulent access, a commercial purpose, or that the information is worth $5,000. The indictment specifically alleges that. In establishing this botnet, Gasparini obtained unauthorized access. The botnet in the indictment is associated with malicious purposes. Gasparini was acquitted of the felony count under A2. If the jury believed that Gasparini had a botnet, they would have found him guilty under the felony subsection under A2. There is no plausible reading of the indictment that would suggest simple intrusion, an intrusion that is committed. First of all, doesn't the Federal Rules of Civil Procedure expressly permit a jury to return a verdict on a lesser-included offense? Yes, Your Honor. And didn't the government in advance of the trial submit requests to charge that specifically requested an instruction on lesser-included offense? Well, days before trial. That's unreasonable. I didn't have time to prepare for simple intrusion. Okay. Your Honor, the allegation— By the way, was that an instruction objected to? It was not. So they asked to have a lesser-included offense instruction. There was no objection to that instruction, and that instruction was given. And the jury then returned a verdict on the lesser-included offense. Yes, Your Honor. Okay. And you're saying, despite all of that, you had no idea that the lesser-included offense was going to be charged? Yes. That's correct. And even at trial, they presented evidence that he created botnet, not that he wanted to intrude into private citizens' computers for the purpose of obtaining information from them. In fact, none of the witnesses came to court and testified that they had any information taken from their computer. They said, actually, their computer was working fine, and the FBI went to their house and told them that their computer was infected. If the government wanted to prove, or could prove, that Gasparini accessed computers for the purpose of damaging them or to obtain information that would damage these individuals, they would have charged them under subsection A-5. And they did not, because they didn't have evidence, because spreading a code alone is not a crime under the CFAA. Thank you. Also, with respect to the vote for vagueness challenge, again, unauthorized access is too vague. What is unauthorized access? Is looking at the co-worker's computer screen unauthorized access? Or is looking at someone else's iPhone on a computer? Is inserting malware into someone else's computer without permission from that person unauthorized access? Is there a question about that? Yes, Your Honor. You don't think that? Do you think that's a serious question, whether that constitutes unauthorized access? It's not a crime under A-2. It's a crime under A-5. The question is, you're saying that unauthorized access is unconstitutionally vague, and I asked you whether what Mr. Gasparini did is, whether there's any question as to whether what Mr. Gasparini did constitutes unauthorized access to someone else's computer. Yes, there is a question. Because unauthorized access must be coupled with obtaining information. And until and unless they prove that you obtain any information, unauthorized access doesn't mean anything. Trespass. Thank you. We'll hear from the government. May it please the Court, my name is Saritha Kamadi Reddy. I'm an assistant U.S. attorney in the Eastern District of New York. I was trial counsel below. To address some of the questions and issues just addressed by defense counsel, let me begin by defense counsel's complaint, claim that there was no evidence that the defendant used the credentials that were necessary to access the bots. In fact, the government introduced direct evidence that the defendant did use those credentials, the request username and the password that was unique to him that he created. Referring the Court to GA-477, GA-477 is a screenshot that computer scientist Louis Cruz testified was taken from the defendant's home computer and showed that he had specifically used the request username and the corresponding password to log in to QNAP bots that he had previously intruded into. In addition, GA-496 is another photograph taken from the defendant's Google Drive, which shows the defendant using a chat program called Internet Relay Chat to communicate with the bots that he had put into his botnet. Those are just two examples, and they are examples from which the Court can infer and the jury could infer as well that the defendant in various ways accessed and obtained information from the computers that he had hacked into with his computer virus. Were those computers that those exhibits referenced United States-based computers? Your Honor, so with respect to the specific IP addresses that are in those photographs, I cannot say off the top of my head, I can get back to you on that. I can say that given the way that the malware operated and what expert witness Ulrich testified to, it would have had the same impact on every computer that it infected as it did on those. One of the things that we noted to the jury and to the district court below was that the defendant's home computers had been erased with sophisticated erasing software. Now, the FBI was able to extract that one piece of evidence, that one set of logins, but it's fair to infer that there were many other logins that would have been captured if that evidence hadn't been destroyed. Moving to the . . . Could you address the appellant's argument about the extraterritorial application of the statute? Was this a domestic or extraterritorial application? After all, Gasparini was in Italy perpetrating these acts, right? Yes, Your Honor. I think this statute can be applied to this case under both steps of the extraterritoriality analysis. First, with respect to whether the statute expressly has extraterritorial reach, we would concur with the district court's analysis in Ivanov, which goes through 1030 and explains that there are various references to protected computers, including computers in foreign communication, foreign commerce, both in the definition of protected computer and in the subsections 1030A7 defining government entities and giving foreign governments, even if they are not in connection with U.S. governments, foreign governments' protection against hacking and exploitation and extortion under the statute. So given those references, the statute clearly contemplates situations in which only foreign conduct abroad is part of the criminal conduct and that can still be punished so long as, under the due process clause, there is a sufficient nexus to the United States. Secondly, we would argue that in this case the court need not actually even reach that extraterritoriality analysis because there is more than sufficient domestic conduct related to the statute's focus. The unauthorized access involved the defendant using command and control servers, at least three of which were in the United States. The New Jersey server, which the government introduced a copy of at trial, showing that all of the bots that he had infected and put under his control checked into a server in New Jersey that he then used to give them commands. So you see that the unauthorized access, he's very intentionally using U.S. infrastructure to commit his crimes. There was also a New York server from Colo Crossing that he used for that Internet relay chat program to communicate with his bots, and the Arizona server from Server Hub that he used to store other malware, the click script and the credential stealing script, and he would instruct his bots to get the malware from that Arizona server. So given that there is infrastructure in the United States, that he specifically targeted computers, a type of computer that was widely used in the United States, the QNAP manufacturer testified that the U.S. was one of their biggest markets and there were more than a million QNAP computers in the United States, and that he had U.S. victims and U.S. advertisers who were affected by his click fraud. I think there's more than enough domestic conduct to meet the test. I want to just address a couple more points that defense counsel raised. One, he noted that he claimed that 12 days before trial was not sufficient to be aware of the lesser included charge. In addition to the federal rule putting defendants on notice, I want to note also that in pretrial filings even before 12 days before trial, in the motion to dismiss filings back and forth, the government set forth the three elements of the misdemeanor charge as the minimum that it had to prove, and the defense also set forth exactly those three elements without the enhancements for the felony as what were at issue. So I think it's fair to say that both sides were aware that that was enough for a conviction in this case. And finally, the defense stated that the victims themselves did not testify that they had information taken from them. I just want to note that the lay victims were not aware of the intrusion. That was the point of the intrusion. It was covert. It was concealed. It was designed to ensure that he had complete control of those computers without alerting the true owner. But could you identify the information that was extracted according to the government's evidence? Sure. There's a variety of information that was extracted. I'll start with the simplest one and sort of the most intuitive, which is one of the types of malicious code instructed the infected computer to take a copy of a particular username and password file called a CCCAM file and send that username and password over to a server hosted at Alta Vista. Records from an Internet trial showed that the Alta Vista server was registered to Gasparini. There were e-mails in Gasparini's e-mail account referencing that server. There were files in his Google Drive that were CCCAM username and password files, and there was password cracking software on one of his command and control servers. So you have there a very clear, at the very least, attempt to obtain information. That's what I had thought, though Mr. Bertolini suggested I thought that the passwords that were extracted were passwords that he had inserted, as opposed to passwords and usernames that were already there. But it sounds as if that's not what you've just described. There's two different sets of passwords at issue in the case. One is that when Mr. Gasparini first intruded into a computer, he created an admin account, username request, and the sealed password. Separately, once he was in the computer, he would instruct that computer to search its contents to see if it had what's called a CCCAM configuration file, which contains that user's username and password for a separate program. And so those are the usernames and passwords, a copy of which- And that's what was then copied and sent to the AltaVista server is what you're- Correct, correct. So that, I think, is the simplest example. Other examples are that, again, the expert testified that in the process of hacking into the computer, Mr. Gasparini gained insight into the insides of that computer of non-public information, the computer's operating system, the file structure, which allowed him to tailor his hack, create hidden files and directories. All of that is information that he's gained. I just needed one example. Sure. Mr. Gasparini also challenged the use of the hard drives and documents that were obtained from Italian law enforcement authorities. Yes. Could you describe- there was a reference in the briefs to an Italian warrant. Was there a warrant or was this- how were those materials obtained? Yes, Your Honor. We did ultimately get a copy of an Italian warrant from Italian authorities. Essentially, the materials were obtained by- the United States law enforcement authorities made a request to the Italians. The Italians reviewed various evidence that they had access to and that we had shared with them and obtained warrant under Italian law to search the homes of both Mr. Gasparini and his co-conspirators in the process of doing so. They obtained various evidence and they gave us some of that evidence that we had then requested via MLAT. We requested a copy of the evidence that was relevant for trial. So there's both a warrant and the MLAT request. Correct. Unless there are any other questions, thank you very much. Mr. Bertolini, you have one minute. Yes. The government just stated that the script will take information from the command that will instruct the QNAP device to search for user and password called CCCAM. CCCAM, as Dr. Ulrich testified- Dr. Ulrich is the government main expert- is a file that searches for user and password related to satellite TV. And he testified at trial that you cannot watch satellite TV with a QNAP. So as a matter of fact, he did not take any of that information. As far as the other information that the government says that is valuable, operating system and architecture of the QNAP, that is all public information. It's listed on the QNAP's website. For example, there's a page in the QNAP's website that lists specifically for each model the architecture, the CPU that is used and everything. So it doesn't help anything. As far as the- Mr. Bertolini, let me ask you, since your time is coming rapidly to a close, your client served his prison sentence and he's been deported to Italy, is that right? Yes, Your Honor. And what remedy are you seeking from us? Overturn the conviction. All right. Why is that especially important to him? Is he planning to come back to the United States? It's especially important because he has a criminal record. Also, the government suggests that he will not be able to come back to the U.S. because in their interpretation, the misdemeanor of computer intrusion statute is a crime of moral torpedo. I will note on the record that the Administrative Appeal Office held an unpublished opinion that it's not, but we would like to know. One quick question. Is the sentencing objection moot since he served his sentence? I understand why he would have a good reason to want the conviction overturned, but is the argument that the sentence was unreasonable, alive in any way, given that he served it? As the government suggests in their brief, it's not moot if the court concludes that simple intrusion is a crime of moral torpedo because if the sentence- Well, there's no issue as to whether it's a crime of moral torpedo. I'm asking about-that's not for us to decide here whether it's a crime of moral torpedo. You have challenged as substantively unreasonable the sentence that he-the jail sentence that he received, and I'm asking is there any continuing effect that would be relevant? Suppose we said, yeah, you're right. This shouldn't have been a one-year sentence. Go back and re-sentence him. Would that have any practical effect for him? Yes. If the sentence is for more than six months, then he will not fall under the petty offense exception and Gasparini will be barred from coming to the United States. Thank you very much.